ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Jan-13 09:42:53
60CV-21-232
C06D04 : 12 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

TAMMY FIMPEL AND PAUL EDWARD
FIMPEL, JR.                                                                                         PLAINTIFFS

vs.                               CASE NO. _____

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                                        DEFENDANT

### COMPLAINT

Come now the Plaintiffs, Tammy Fimpel and Paul Edward Fimpel, Jr., by and through their attorneys, TAYLOR & TAYLOR LAW FIRM, P.A., and for their Complaint do state:

### BACKGROUND

1. Plaintiff Tammy Fimpel has suffered <u>at least</u> $42,720.49 in economic damages in this case ($36,136.81 in medical expenses and $6,583.68 in lost wages).

2. The tortfeasor's insurance company (GEICO) tendered its policy limits of $25,000.

3. Plaintiffs then demanded the policy limits of $25,000 from State Farm under Plaintiffs' underinsured motorist policy.

4. This would have valued Plaintiff Tammy Fimpel's noneconomic damages at only $7,279.51.

5. Nevertheless, State Farm denied even that demand.

6. Instead, State Farm offered only $10,000, which is <u>less than the economic damages in this case</u>.



Page 1 of 10

7. Therefore, Plaintiffs were left with no choice but to sue their own insurance company.

## JURISDICTION AND VENUE

8. At all times relevant to this Complaint, Plaintiffs were residents of Maumelle, Pulaski County, Arkansas, and were citizens of the State of Arkansas.

9. At all times relevant to this Complaint, Defendant was an insurance company authorized and doing business in Pulaski County, Arkansas.

10. The facts and circumstances giving rise to this Complaint occurred in Maumelle, Pulaski County, Arkansas.

11. This Court has subject matter jurisdiction of this matter pursuant to Ark. Code Ann. § 16-13-201(a).

12. This Court has personal jurisdiction of the parties pursuant to Ark. Code Ann. § 16-4-101(B).

13. Venue in this county is proper pursuant to Ark. Code Ann. § 16-60-101(a)(1) (county in which a substantial part of the event or omission giving rise to the cause of action occurred), (a)(2)(B) (principal office in this state), & (a)(3)(A) (county in which the plaintiff resided).

## FACTS

14. The collision that is the subject of this Complaint occurred on or about January 17, 2017, near the intersection of Highway 365 and Highway 100 in Maumelle, Arkansas.

15. Prior to the collision, Plaintiff Tammy Fimpel was traveling south in the inside lane of Highway 365.

16. At that point, the tortfeasor turned in front of Plaintiff Tammy Fimpel.

17. Plaintiff Tammy Fimpel promptly applied her brakes, but was unable to avoid a collision.

18. As a result, the front of the vehicle being driven by Plaintiff Tammy Fimpel collided with the side of the vehicle being driven by the tortfeasor.

19. The tortfeasor was negligent in the following ways:

   A. Failure to yield the right of way to Plaintiff in violation of Ark. Code Ann. § 27-51-502;

   B. Driving too fast for conditions in violation of Ark. Code Ann. §27-51-201;

   C. Reckless driving in such a manner as to show disregard for the safety of persons and property in violation of Ark. Code Ann. §27-50-308;

   D. Careless and prohibited acts of driving in violation of Ark. Code Ann. §27-51-104, and other violations of applicable Arkansas traffic laws;

   E. Failure to keep a proper lookout for other vehicles on the roadway;

   F. Failure to drive at a speed that was reasonable under the circumstances;

   G. Failure to keep the Tortfeasor's vehicle under proper control;

   H. Failure to use ordinary care to operate the Tortfeasor's vehicle in recognition of the Plaintiff's superior right to use the roadway; and

   I. Failure to otherwise use ordinary care under the circumstances at the time of the collision.

20. As a direct result of this negligence, Plaintiff Tammy Fimpel suffered the following injuries:

   J. Serious bodily injuries to Plaintiff Tammy Fimpel's back, head, nerves, and other parts of Plaintiff's body;

K.  Medical expenses incurred in the past, and transportation expenses to obtain such medical treatment;

L.  Future medical expenses to be incurred, and transportation expenses to obtain such future medical treatment;

M.  Physical pain and disability experienced in the past;

N.  Physical pain and disability to be experienced in the future;

O.  Loss of income in the past;

P.  Loss of income in the future;

Q.  Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision;

R.  Mental anguish experienced in the past, which includes but is not limited to Plaintiff's loss of quality of life due to permanent injuries causing chronic pain that limited her activities;

S.  Mental anguish to be experienced in the future, which includes but is not limited to Plaintiff's loss of quality of life due to permanent injuries causing chronic pain that limits her activities;

T.  Any scars, disfigurement, and visible results of her injury due to "residential limitation of motion;" *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968);

U.  The reasonable expense of any necessary help in Plaintiff's home in the past, and reasonably certain to be required in the future, as a result of Plaintiff's injuries; and

V. Permanent bodily injuries that have been suffered, which is a life-changing event causing Plaintiff to lose the ability to enjoy a normal life.

21. As a direct result of this negligence, Plaintiff Paul Edward Fimpel, Jr., who was at all times relevant hereto the spouse of Plaintiff Tammy Fimpel and as such lived and cohabited with her, has a separate claim for loss of consortium.

22. At the time of the incident described hereinabove, Defendant was a corporation registered and licensed to sell insurance in the State of Arkansas.

23. Defendant sold an insurance policy (the "Policy") to the Plaintiffs.

24. The Policy was in force at all times relevant to this litigation.

25. The Policy contained underinsured motorist coverage ("UIM Coverage").

26. The UIM Coverage policy limits were $25,000 per person, and $50,000 per incident.

27. A copy of the Confirmation of Coverage is attached hereto as Exhibit A and incorporated herein by reference.

28. When a copy of the Policy is obtained from Defendant during the course of discovery, this pleading will be supplemented to comply with Arkansas Rule of Civil Procedure 10.

29. Plaintiffs reached a settlement with the Tortfeasor's insurance company for the policy limits of $25,000 (the "Settlement").

30. Prior to the Settlement, Plaintiffs strictly complied with the requirements of Ark. Code Ann. § 23-89-209(c) and/or obtained consent from Defendant to settle. *See* Exhibit B.

31. Given the severity of Plaintiffs' injuries, the Settlement did not adequately compensate Plaintiffs.

32. Therefore, on or about August 29, 2020, Plaintiffs demanded that Defendant tender the UIM Coverage limits.

33. The demand required a response on or before September 14, 2020.

34. The demand set forth that Plaintiff Tammy Fimpel's special damages were *at least* $42,720.49:

| UAMS (Total of Both Statements) | $33,856.81 |
| Skinner Chiropractic | $2,280.00 |
| Lost Wages | $6,583.68 |
| Total | **$42,720.49** |

35. As made clear in the demand letter, there are additional medical expenses that were then unknown to the Plaintiffs.

36. The reason that there are additional expenses is that once it became clear that the damages would exceed the policy limits, Plaintiffs ceased ordering medical records and bills in an effort to reduce costs.

37. Plaintiffs presumed that their insurance company would act in good faith and settle the claim, rather than forcing Plaintiffs to expend additional sums of money.

38. On this point, it should be noted that Geico, *which is the third-party carrier and thus has no obligation to act in good faith as to the Plaintiffs*, paid its policy limits based on the same information that was provided to Defendant.

39. Further, the amount set forth above does not include either Plaintiff's non-economic damages.

40. On or about September 11, 2020, Defendant responded and requested additional documentation.

41. On or about October 10, 2020, Plaintiffs submitted the additional information requested and set a response deadline of October 24, 2020.

42. Plaintiffs verbally extended this deadline.

43. On or about November 20, 2020, Defendant denied the demand and offered to settle for only $10,000.

## CAUSE OF ACTION #1 – BREACH OF CONTRACT

44. At the time of the wreck described hereinabove, Plaintiffs had in effect with Defendant the UIM Coverage with policy limits of $25,000 per person, $50,000 per incident.

45. The UIM Coverage provided that in the event Plaintiffs should be involved in a wreck caused by the negligence of an underinsured motorist, the damages would be compensated in an amount not to exceed the UIM Coverage policy limits.

46. As a direct and proximate result of the Tortfeasor's negligence, Plaintiffs have suffered injuries as stated hereinabove.

47. Under the terms of the UIM Coverage, the Tortfeasor was an underinsured driver, in that the Tortfeasor only carried a policy of liability insurance with limits of $25,000 per person.

48. This limit was insufficient to compensate Plaintiffs for their damages.

49. Defendant has failed to comply with the terms of its own policy of insurance.

50. There is no legal basis for Defendant's continuing failure to comply with the terms of the Policy.

## CAUSE OF ACTION #2 – BAD FAITH

51. At all times relevant herein, Defendant had a duty and agreement to act in good faith and deal fairly with Plaintiffs when Defendant entered into a contractual agreement with them and accepted premium payments.

52. Defendant thereby assumed a special relationship with, and fiduciary obligations to, Plaintiffs, and agreed to abide by its respective duties.

53. Defendant intentionally breached these duties by engaging in dishonest, oppressive and malicious acts in an attempt to avoid liability under the UIM Coverage.

54. Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, consciously disregarding or turning a blind eye to clear medical records and documentation in the claims file.

55. Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, forcing Plaintiffs to seek legal redress. By consciously disregarding or turning a blind eye to clear evidence, Defendant, knowing it had no legal justification for doing so, purposefully forced Plaintiffs to file this Complaint in order to obtain the insurance proceeds to which Plaintiffs are entitled.

56. Defendant engaged in dishonest, oppressive, and malicious conduct by, among other things, setting out to collect the minimum facts it could find to issue a denial. Had Defendant conducted a competent investigation and review of medical records and bills, the UIM Coverage limits should have been tendered immediately.

57. Defendant has engaged in, in the course of their dealing with Plaintiffs, a pattern of deception and unfair practices. This dishonest, oppressive, and malicious behavior constitutes bad faith under Arkansas law.

## AMOUNT OF DAMAGES
### (FOR JURISDICTIONAL PURPOSES UNDER ARK. CODE ANN. § 16-63-221)

58. Plaintiffs' injuries and damages are *less than* the minimum amount required for federal court jurisdiction in diversity of citizenship cases, and removal to federal court would therefore be improper.

## DEMAND FOR TRIAL BY JURY

59. Plaintiffs demand a trial by jury for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

60. Upon completion of discovery, Plaintiffs reserve the right to plead further to state additional claims and to name additional parties to this action.

## PRAYER FOR RELIEF

61. Plaintiffs are entitled to recover all of the damages set forth hereinabove, all of which exceed the amount of the UIM Coverage limits.

62. Plaintiffs are entitled to recover punitive damages against Defendant as a result of Defendant's dishonest, oppressive, or malicious conduct that amounts to bad faith under Arkansas law.

63. With respect to Plaintiffs' breach of contract claim, Plaintiffs are entitled to attorney's fees, costs, a 12% penalty, and pre- and post-judgment interest pursuant to Ark. Code Ann. § 23-79-208.

64. Plaintiffs are also entitled to attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and costs pursuant to Ark. R. Civ. P. 54.

WHEREFORE, Plaintiffs pray for judgment against Defendant for the damages caused by Defendant's breaches described above, in an amount as set forth above, and for all other relief at law or equity to which Plaintiffs may be entitled.

Respectfully submitted,
Tammy Fimpel, and Paul Edward Fimpel, Jr.,
*Plaintiffs*

BY: */s/ Andrew M. Taylor*
TAYLOR & TAYLOR LAW FIRM, P.A.
Andrew M. Taylor, Ark. Bar No. 2005147

Tasha C. Taylor, Ark. Bar No. 2005148
12921 Cantrell Road, Suite 205
Little Rock, AR 72223
Phone: (501) 246-8004
Fax:    (501) 246-8009
Email: Andy@TaylorLawFirm.com
       Tasha@TaylorLawFirm.com

*Counsel for Plaintiffs*



State Farm Mutual Automobile Insurance Company

# Confirmation of Coverage

04-07V0-85X
Claim Number

This confirms that policy number 180054004H, covering a(n) 2017 Ford EXPLORER, 1FM5K7D84HGA67059, was issued to Paul Fimpel and Tammy Lynn Fimpel and was in effect on the accident date of January 17, 2017. The coverages and limits of liability for this policy on that date were:

A 25/50/50, D100, G500, H, R1 80%/500, U 25/50, U1 25, W 25/50, S1, T1

*Jill Baughn*
Claim Team Manager



EXHIBIT A

3/10/2020

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



July 28, 2020

Taylor & Taylor Law Firm
12921 Cantrell Rd Ste 205
Little Rock AR 72223-1799

State Farm Claims
PO Box 106171
Atlanta GA 30348-6171

RE:  Claim Number:   04-07V0-85X
     Date of Loss:   January 17, 2017
     Our Insured:    Tammy Lynn Fimpel

To Whom It May Concern:

State Farm® consents to the settlement of the $25,000.00 policy limits of Geico's Bodily Injury policy with our insured, Tammy Lynn Fimpel. State Farm does not intend to pursue subrogation against Geico or its insured(s) for any payments made from the Underinsured Motorist coverage of State Farm Mutual Automobile Insurance Company.

State Farm agrees that by settling the Bodily Injury claim with Geico, Tammy Lynn Fimpel does not prejudice her ability to present an Underinsured Motorist claim with State Farm.

Please contact us at the number below should you need any further information. Also, please provide us with any policies your client may have that carries Underinsured Motorist coverage.

Sincerely,

Davita Johnson
Claim Specialist

(615) 692-7391
Fax: (855) 820-6318

State Farm Mutual Automobile Insurance Company



EXHIBIT B